UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JACK BELL, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | 1:03-cv-241-JDT-TAB |
| ) | |
| DAIMLER CHRYSLER CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON DEFENDANT'S SUMMARY JUDGMENT MOTION (Doc. No. 72)**[1]

Defendant, Daimler Chrysler Corporation ("Chrysler") has asked this court to enter summary judgment in its favor as a matter of law.  The Plaintiffs are current and former Chrysler employees who have filed this lawsuit seeking to enforce certain contractual rights which they say were violated by Chrysler.  This case is an action for breach of the collective bargaining agreement brought under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).  The claim is what is commonly referred to as a "hybrid" claim, because Plaintiffs are asserting that they have been forced to bring their claim under the labor agreement to this court because the union which represents them, the United Auto Workers ("UAW"), has failed to provide them with fair representation in connection with the alleged contractual breach.

---

[1] This Entry is a matter of public record and will be made available on the court's web site.  However, the discussion contained herein is not sufficiently novel to justify commercial publication.

### *Summary Judgment Standard*

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(c), which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996).  It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence of record which supports its contentions, and creates a material question of fact.  *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should

view the disputed evidence in the light most favorable to the nonmoving party. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006). The local rules of this district also require that the moving party set forth a Statement of Undisputed Facts and directs that "the Court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy except to the extent that such facts: are specifically controverted in the opposing party's Statement of Material Facts in Dispute . . . ." S.D. Ind. Local Rule 56.1(e). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM, Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not have a place in the summary judgment analysis. *Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). If the nonmoving party is unable to put forth evidence to establish the existence of an element for which he or she bears the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### *Factual Background*

As part of a large scale layoff at the New Castle, Indiana Chrysler plant, each of the more than two hundred named Plaintiffs in this matter lost their jobs and were let go at some point near the end of November of 1979. Each of them also retained certain rights to re-employment with Chrysler. Those rights are derived from the collective bargaining agreement between Chrysler and the UAW in place at the time as well as

any subsequent or contemporaneous agreements between the two, such as Letters of Agreement, which are common memorializations used by parties to a national collective bargaining agreement to explain, extend or provide temporary contractual rights to various local or regional facilities. These Letters of Agreement serve, essentially, as addenda to the collective bargaining agreement.

The contractual rights retained by employees subject to layoff are most often referred to as "work opportunity rights" or "recall rights." Those two descriptive phrases are used by some to describe an employee's general rights to rehire and by others, respectively, to differentiate between sub-categories of such rehire rights. It is clear from the deposition testimony and other evidence submitted by the parties, as well as the pleadings filed with this court, that some individuals use the two phrases interchangeably and some do not. While the phrases may be terms of art to those who negotiate labor agreements, the choice of phrase used to describe the rights being asserted by Plaintiffs in this case is not outcome determinative. Plaintiffs believe that they had rights to obtain employment with other Chrysler plants in Indiana before open jobs were offered to others with lesser or no Chrysler seniority.

At the core of the claim being brought in this lawsuit is that between 1984 and 1987, it is undisputed that the Chrysler plant in Kokomo, Indiana was hiring employees who had no prior experience with Chrysler instead of offering those jobs to the Plaintiffs, who had been subject to layoff at Chrysler's New Castle plant. The timing of the hiring at Kokomo was particularly improvident for many of the Plaintiffs because any recall rights retained were limited to a period of time equal to their length of employment with

Chrysler or five years, whichever was longer, and most of the Plaintiffs had been hired at New Castle during the early to mid-1970s. If an employee who was laid off did not return to employment within his available recall window he lost any seniority he had gained prior to the layoff, which not only impacted his ability to become re-employed with Chrysler, but also had a negative effect on potential retirement entitlements. So, even though many of the Plaintiffs eventually obtained re-employment with Chrysler, they lost seniority.

Whether or not the Plaintiffs were entitled to the jobs being filled at the Kokomo plant in the 1980s is a question the answer to which rests in an interpretation of the agreements between the company and the union as well as a determination of which agreements were in place and enforceable at any given time. As is true of most labor contracts involving large national unions like the UAW, under the contractual agreements at issue here, a dispute over the interpretation of the terms and conditions of employment is subject to a grievance process. And, it is a fundamental principle of labor law under the LMRA that such disputes may not be initiated in the federal courts, but must be pursued first through an exhaustion of the remedies provided for in the collective bargaining agreement. *Clayton v. UAW*, 451 U.S. 679, 682 (1981); *Huffman v. Westinghouse Elec. Corp.*, 752 F.2d 1221, 1223 (7th Cir. 1985).

In this case, it took quite some time for a grievance to be filed. A grievance was finally filed on April 9, 2002 and again on April 29, 2002 by UAW Local 371, on behalf of those employees who had been laid off from New Castle and had not been offered a chance to exercise their work opportunity rights at other Indiana plants. It is

uncontested that at various times in the 1980s and early 1990s there were rumors, discussions, letter writing campaigns, meetings of employees with union officials, threats of lawsuits - all with respect to the failure of Chrysler to hire former New Castle plant employees to fill openings at its Kokomo facility,[2] but no grievance was filed on their behalf.  In addition to various local union officials opining that nothing in the contract supported a grievance, Plaintiffs claim that no grievance was filed in part because they were not aware of the applicability of certain Letters of Agreement between the UAW and Chrysler, in which Chrysler agreed that union employees subject to layoff at any Indiana Chrysler plants would have priority over new hires at locations outside the laid off employees' original "labor market area," a term which had previously been defined as a fifty mile radius.  This priority was to exist at all Indiana Chrysler plants.

The event which prompted the filing of the grievances and, according to Plaintiffs, provided them with knowledge of the applicability of these Letters of Agreement extending the geographic reach of their recall rights, was the successful pursuit by a union brother, Ronnie Lough, of a reinstatement of his seniority rights through a complaint he filed with the Veterans Administration and a local Congressman.  Mr. Lough had been subject to the 1979 layoff at New Castle and later entered the Navy in 1982.  At the time of his discharge from the Navy in 1986, he wrote to the UAW to

---

[2] There remain questions of fact with regard to which of the Plaintiffs in this lawsuit were active participants in the various employee and union protestations, which Plaintiffs simply knew of efforts to further their employment rights or opportunities at other Chrysler plants, and which Plaintiffs may have paid no attention to the issue or any of the efforts being made by others. These questions, however, are not material to the outcome of this motion.

request that a military leave of absence be recognized and that he be allowed to return to employment with Chrysler, but was informed that no military leave would be granted because Chrysler had yet to reach his seniority date with respect to recalls from the New Castle layoff. Lough eventually was offered an opportunity to return to the New Castle plant despite his loss of his original seniority date. Complaining that Chrysler was hiring people with no seniority or less seniority than he, both before and after his 1986 request to be brought back, Lough contacted his Congressman about his loss of seniority. His Congressman referred the complaint to the Veterans Administration and, following the pursuit of his complaint by the Veterans Employment and Training Services, his original seniority date was reinstated as of March 12, 2002.

The grievances filed by Local 371, following Mr. Lough's successful pursuit of his seniority rights, were denied by Chrysler at the second step of the grievance process and eventually consolidated and appealed by the union through step 4 and beyond to the "Appeal Board Step" of the process. The company's position was consistent with respect to maintaining that the grievances were untimely. At the Appeal Board Step, international union representative Paul Cutway was responsible for investigating the charges in the grievance and discussing or advancing those charges with the company representatives. As a result of his investigation, Cutway determined that the Lough situation was not the same as the circumstances complained of in the grievance. He also concluded that it was impossible for him to prove individual work opportunity violations, in part due to the loss of records over time. He reached a conclusion that the grievances were untimely, and though he felt the return of Lough's seniority certainly

"opened a can of worms", he saw Lough's pursuit of reinstated seniority through the rights of a serviceman as a circumstance different from the circumstances upon which the grievances were based.  The grievances were withdrawn by the UAW and Local 317 was advised of the same by letter dated February 4, 2003.

Article 33 of the UAW Constitution provides an internal procedure for appealing decisions, such as one to withdraw a grievance.  The procedure allows for an appeal to be initiated by either a subordinate body of the international, such as a local unit, or by any member.  The route of the appeal varies based upon the level at which the decision being appealed was made.  In this instance, the applicable provision of Article 33 of the union's constitution provides that with respect to the handling or disposition of a grievance, "[W]here the challenge is against an International Representative, Regional Director, International Officer or National Department the levels of appeal are first to the International Executive Board, and then to the Convention Appeals Committee, or where appropriate to the Public Review Committee."  An appeal must be filed within thirty days of the final decision being appealed.

In this case, neither Local 371 nor any of its members, upon whose behalf the grievances were filed, elected to file an appeal.  Instead, many of those affected members chose to become Plaintiffs in federal court and filed this lawsuit on February 18, 2003.  Later, in May of 2003 other members filed a similar lawsuit and the two cases were consolidated with more than two hundred named Plaintiffs.  Three additional Plaintiffs were later added to that second group and an Amended Complaint was filed.

## *Discussion*

Chrysler filed its Motion for Summary Judgment on September 5, 2006, claiming entitlement to judgment as a matter of law for three reasons: (1) a lack of sufficient evidence to prove that the union acted in bad faith or in breach of its duty of fair representation;[3] (2) the failure of the Plaintiffs to exhaust their internal union remedies; and, (3) the running of the statute of limitations. For purpose of the summary judgment motion only, Chrysler concedes the dispute over whether or not it violated its agreement with the union when it hired people with less or no seniority than the Plaintiffs at its Kokomo plant beginning in 1984. Also, this court previously severed that part of the summary judgment motion which seeks summary judgment on the basis of a lack of evidence to support a breach of duty on the part of the union, because only limited discovery has been conducted to date. It now appears that discovery on that issue will be unnecessary.

The court received two separate responses to the Motion for Summary Judgment, one from the group of Plaintiffs that filed their complaint in February of 2003 and one from the group that filed in May of that year. There are arguments made in each response that are unique to that response, but there are also arguments that are made by both groups. More importantly, the basic premise upon which both groups

---

[3] When a plaintiff sues under Section 301 of the LMRA based upon a breach of a labor agreement and the failure of his or her union to provide fair representation in connection with that alleged breach, the plaintiff must prove that the union acted arbitrarily or in bad faith, regardless of whether the union has been named as a defendant in the lawsuit. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983).

proceed is shared.  All Plaintiffs assert that the reinstatement of Ronnie Lough's seniority in 2002 is what provided the grounds for challenging Chrysler, via the grievance process, for its hiring practices at other Indiana plants following the 1979 layoff at New Castle.  This contention is made, at least in part, to avoid the statute of limitations issue with respect to their challenge of contract breaches said to have occurred nearly twenty years prior to the filing of the lawsuits.

Both sides agree that the statute of limitations for filing a "hybrid" action under § 301 is six months from the point in time when a union employee is aware of, or with reasonable diligence should have been aware of, both the breach of the labor agreement on the part of the employer and the union's breach of its duty to represent the employee fairly.  See Metz v. Tootsie Roll Indus., Inc., 715 F.2d 299, 304 (7th Cir. 1983).  Plaintiffs cite to Chapple v. National Starch and Chemical Co. and Oil, 178 F.3d 501, 505 (7th Cir. 1999), and argue that in this case the running of the statute is triggered by the International's letter to Local 317 in February of 2003, indicating that it was withdrawing the grievance from the appeals process.  Chrysler first points to the evidence from depositions and documents obtained during discovery that indicate that the hiring practices at the Kokomo plant were a hot topic of debate amongst nearly everyone at Local 371 during the 1980s and early 1990s, and that letter writing campaigns, threatened lawsuits and other efforts were engaged in on behalf of those laid off in 1979.  Those efforts targeted both union and company officials.  With that evidence in mind and with the applicable legal standard being "knew of" the breach and the union's refusal to pursue it or with reasonable diligence "should have known,"

Chrysler makes a compelling argument that the statute of limitations ran years ago. It directs the court's attention to *Christensen v. APV Crepaco,* 178 F.3d 910, 914-15 (7th Cir. 1999), which held that repeated and unanswered complaints to the union were enough to put a member on notice that the union was not going to be filing a grievance on the member's behalf, thereby triggering the running of the statute of limitations for a hybrid § 301 claim.

However, the issue of the statute of limitations need not be reached in deciding this motion. Proceeding under the premise advanced by Plaintiffs, that it was not until the union chose to withdraw Local 371's grievances in February of 2003, that the duty of fair representation was breached, Plaintiffs still had an obligation to pursue their internal union remedy before filing suit. In *Clayton v. UAW*, 451 U.S. 679, 685 (1981), the Supreme Court held that unless the internal union appeals process cannot result in reinstatement of the grievance at issue or cannot provide complete relief, plaintiffs who pursue a hybrid § 301 lawsuit are ordinarily required to exhaust all the internal appeals prior to bringing suit. The Seventh Circuit has opined that the *Clayton* decision requires the trial court to analyze three factors in making a determination of whether exhaustion is required. Those three factors are:

> (1) Whether or not union officials are so hostile that there could be no hope for obtaining a fair hearing;
>
> (2) Whether the internal appeal procedure would be inadequate to obtain a reinstatement of the grievance at issue or the full relief available under § 301; and
>
> (3) Whether pursuit of the internal appeals would result in undue delay in obtaining a hearing on the merits.

*Hammer v. UAW*, 178 F.3d 856, 858 (7th Cir. 1999). The determination made by the trial court following examination of these three factors is discretionary, *Clayton*, 451 U.S. at 689, and receives deference on appeal. *Arnold v. United Mine Workers of Am.*, 293 F.3d 977, 979-80 (7th Cir. 2002).

A short name for the first factor is "futility." A trial court can excuse exhaustion if the Plaintiffs show that it would have been futile for them to have pursued an internal appeal. *Id.* "It is well-settled, though, that a plaintiff must show that union hostility is so pervasive that it infects every step of the internal appeals process." *Id.*; *see also Sosbe v. Delco Elecs. Div. of Gen. Motors Corp.*, 830 F.2d 83, 86 (7th Cir. 1987). One of the two groups of Plaintiffs has argued that it would have been futile for them to have appealed the withdrawal of the grievances. The argument is made without any support in the record. The only evidence drawn upon by these Plaintiffs in support of the notion that an appeal would have been futile is testimony from some Plaintiffs who were rehired by Chrysler at the New Castle facility that they were told by local and international officials that they should be glad they had jobs and that at a meeting where the decision to withdraw the grievances was discussed an international union representative said that the issue was now "dead" and should be dropped. This minimal effort to support the contention of futility is not enough to begin to approach what is necessary to show that the internal appeal process was poisoned to the point that any attempt to appeal would have been in vain.

All the Plaintiffs claim that the decision of the union to withdraw the grievances "with prejudice" left the internal appeal process toothless because the grievances could

-12-

not be reinstated. However, Plaintiffs disregard a Letter of Agreement dated October 28, 1985, published as a part of the 1999 labor agreement, which was in effect at the time the grievances were withdrawn. In pertinent part that letter provides as follows:

> During negotiations of the National Production and Maintenance, Office and Clerical, Engineering and Parts Depot Agreements, the parties acknowledged the desirability of ensuring prompt, fair and final resolution of employee grievances. The parties also recognize that the maintenance of a stable, effective and dependable grievance procedure is necessary to implement the foregoing principle to which they both subscribe. Accordingly, the parties view any attempt to reinstate a grievance properly disposed of as contrary to the purpose for which the grievance procedure was established and violative of the fundamental principles of collective bargaining.
>
> However, in those instances where the International Union, UAW, by either its (i) Executive Board, (ii) Public Review Board, or (iii) Constitutional Convention Appeals Committee has reviewed the disposition of a grievance and found that such disposition was improperly effected by the Union or a Union representative involved, the UAW Chrysler Department may inform the Corporate Labor Relations Staff in writing that such grievance is reinstated in the grievance procedure at the step at which the original disposition of the grievance occurred.

There is no limitation in the letter which would bar the reinstatement of grievances withdrawn without prejudice.[4] Indeed, the uncontradicted testimony of union official Paul Cutway is that the grievance could have been reinstated.

None of the Plaintiffs raise an issue with respect to third factor of analysis on exhaustion, that being undue delay. However, despite statements of concession in their brief regarding ignorance of the appeals process being "no excuse," there are passing

---

[4] The same Letter of Agreement was, in part, the basis for Chief Judge Larry J. McKinney's grant of summary judgment to Chrysler in another matter where the Plaintiffs failed to utilize the internal union appeals process to challenge the union's decision not to pursue a grievance on their behalf. *See Bell, et al. v. Daimler Chrysler Corp.*, Cause No. 1:05-cv-1823-LJM-WTL, Order on Defs.' Mots. for Summ. J. (Doc. #51) (S.D. Ind. Dec. 7, 2006).

references made to the fact that none of the union leaders informed the Plaintiffs of their right to appeal the decision. The Seventh Circuit has recognized that a union's constitution is, generally, a freely available document which provides certain rights to the members and that those members have an obligation to become familiar with those rights. *Newgent v. Modine Mfg. Co.,* 495 F.2d 919, 927-28 (7th Cir. 1974), *overruled on other grounds by Rupe v. Spector Freight Sys., Inc.*, 679 F.2d 685, 690 (7th Cir. 1982); *see also Garner v. UAW*, 800 F. Supp. 706, 713 (S.D. Ind. 1991). So, as admitted in one of their briefs, even if the Plaintiffs were ignorant of their appeal rights, that ignorance is no basis for a failure to exhaust.

### *Conclusion*

Plaintiffs' failure to exhaust their internal union remedies is unexcused and renders unavailable a remedy through the pursuit of a hybrid § 301 action under the LMRA. For that reason Defendant's Motion for Summary Judgment (Document #72) is **GRANTED**.

ALL OF WHICH IS ENTERED this 1st day of May 2007.

John Daniel Tinder, Judge
United States District Court

Copies to:

Holly A. Brady
THEISEN BOWERS & ASSOCIATES
hbrady@tbalawyers.com

Mark W. Ford
ICE MILLER
mark.ford@icemiller.com

Sarah Jane Graziano
HENSLEY LEGAL GROUP
sgraziano@hensleylegal.com

John B. LaRue
jlarue@johnblarue.com

Susannah M. Pieper
ICE MILLER LLP
susannah.pieper@icemiller.com

Monica S. Senk
THEISEN BOWERS & ASSOCIATES
reception@tbalawyers.com

John C. Theisen
THEISEN BOWERS & ASSOCIATES
jtheisen@tbalawyers.com

Magistrate Judge Tim A. Baker